IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIMAH BOYD,<br><br>    Plaintiff,<br><br>  v.<br><br>AUTOZONE, INC., a Nevada Corporation;<br>JOSH HUGHES, an individual; and DOES 1<br>THROUGH 10,<br><br>    Defendants.<br>_____/ | No. C 11-00776 JSW<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Now before the Court are the cross-motions for summary judgment filed by Defendants AutoZone, Inc. ("AutoZone") and Josh Hughes ("Hughes") (collectively "Defendants") and by Plaintiff Karimah Boyd ("Boyd"). Boyd also moves to withdraw his admissions. The Court finds these matters suitable for disposition without oral argument and VACATES the hearing set for September 28, 2012. *See* N.D. Cal. Civ. L.R. 7-1(b). The Court also VACATES the case management conference set for September 28, 2012. Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, the Court grants Boyd's motion to withdraw his deemed admissions, grants in part and denies in part AutoZone's motion for summary judgment, and denies Boyd's motion for summary judgment.[1]

---

[1] Defendants objects to Boyd's entire declaration on the ground that it was not signed by Boyd or attested to by his attorney. Northern District Local Civil Rule 5-1(i)(3) provides that:
> In the case of a Signatory who is not an ECF user, or who is an ECF user but whose user ID and password are not utilized in the electronic filing of the document, as in the case of documents requiring multiple signatures, the filer of the document shall attest that concurrence in the filing of the document has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document. The filer's

**BACKGROUND**

Prior to 2007, Boyd had worked for AutoZone twice before, in 2001 and then again in 2002. (Declaration of Kevin Bussey ("Bussey Decl."), Ex. C.) Boyd voluntarily resigned from both of these periods of work. (Declaration of Lucas Muñoz ("Muñoz Decl."), Ex. A (Deposition of Karimah Boyd) at 33:10-21.) In 2007, Boyd was rehired by AutoZone as a parts store manager. (*Id.*, Ex. A at 36:6-37:16.) Later that year, Boyd was promoted to hub coordinator. (*Id.*, Ex. A at 46:11-47:2.)

On two separate occasions, Boyd allowed a non-employee into the store after it was closed. During the initial investigation of this incident, Boyd referred to the non-employee as

---

attestation may be incorporated into the document itself, or take the form of a declaration attached to the document.

Defendants argue that this failure is more than a technicality and note that there is at least some possibility that the declaration was filed without Boyd's concurrence. (Reply at 4.) Although Boyd filed a motion to withdraw his admissions after Defendants objected to Boyd's declaration in their reply brief, Boyd fails to address this deficiency. In addition, Boyd's counsel e-filed a second declaration by Boyd in support of the motion to withdraw, again, without a signature by Boyd or an attestation by Boyd's counsel. Due to Boyd's failure to comply with Northern District Local Civil Rule 5-1(i)(3) and Boyd's failure to address or seek leave to correct this failure after this defect was highlighted in Defendants' reply brief, the Court sustains Defendants' objection and will not consider Boyd's declarations. Because the Court sustains Defendants' objection to the entire declaration, the Court need not address Defendants evidentiary objections to the statements within this declaration.

The Court DENIES Boyd's request for judicial notice because the Court did not need to consider this evidence in order to resolve Boyd's motion to withdraw his deemed admission.

On September 25, 2012, Boyd filed an administrative motion to supplement the record on the motions for summary judgment and to object to the admission of Exhibit A to the declaration of Antoinette Dee ("Dee Decl."). The Court OVERRULES the objection. The Court DENIES the remainder of Boyd's motion. To the extent Boyd seeks to submit additional evidence in support of his claims regarding failure to compensate for overtime, this evidence is not necessary at this time. As discussed below, the Court finds that both parties have submitted sufficient evidence to create a question of fact which precludes summary judgment. This evidence does not alter that conclusion. To the extent Boyd seeks to submit additional evidence in support of his claims of racial harassment and discrimination, this evidence also does not alter the Court's conclusions as discussed below. Notably, this administrative motion does nothing to address Defendants' dispositive arguments regarding the statute of limitations. Moreover, the witnesses statements regarding a non-African-American employee allowing her sister into a closed store without being disciplined are insufficient to show that other employees with similar qualifications outside of Boyd's protected class were treated more favorably. Notably, these witnesses do not state that Hughes was aware of this purported incident. Nor do these witnesses state that this non-employee performed work in the store. Finally, the Court notes that Boyd's counsel, yet again, seeks to submit a declaration by her client without the required certification under Northern District Local Civil Rule 5-1(i)(3). Counsel is directed to review and familiarize herself with the Local Civil Rules.

2

his wife, but he later clarified that they were not married. (*Id*., Ex. A at 210:19-25.) On one of those occasions, the non-employee helped "put up truck," and on the other, in early August 2008, the non-employee cleaned the store restroom. (*Id*., Ex. A at 172:20-22, Exs. 11, 13 to Ex. A.) As a result, on August 19, 2008, AutoZone demoted and transferred Boyd. Hughes was the manager who approved the recommendation to demote and transfer Boyd. (Declaration of Josh Hughes, ¶¶ 3-5.) The location to which Boyd was transferred was approximately four miles away. (Muñoz Decl., Ex. A at 279:10-19.)

Sheri Lemond, AutoZone's Human Resources Generalist, was the one who recommended that Boyd be demoted and transferred. She made that recommendation solely based on Boyd's admission that he violated company policy by allowing a non-employee into the store after-hours and having the non-employee perform work. (Declaration of Sheri Lemond ("Lemond Decl."), ¶¶ 1, 4, 6.) The transfer was typical in connection with a demotion from a managerial position. (*Id*., ¶ 6.) Ms. Lemond made the recommendation so that Boyd would be working with new employees who he had not previously supervised. (*Id*.)

On August 21, 2008, Boyd delivered a handwritten note on which he stated that he thought the decision to demote and transfer him was biased and possibly racially motivated. (Muñoz Decl., Ex. 12 to Ex. A.) Boyd did not return to the AutoZone store to work after he was informed of AutoZone's decision to demote and transfer him. (Dee Decl., Ex. A at 7; Bussey Decl., ¶ 6, Ex. C.) On August 25, 2008, Boyd filed a workers' compensation claim. Boyd stated that the demotion and transfer stressed him out and that he could not work because of his mental stress. (Dee Decl., Ex. A.) Ms. Lemond was notified that Boyd filed a workers' compensation claim due to "mental stress." (Lemond Decl., ¶ 8.) When Ms. Lemond spoke to Boyd on August 26, 2008, he informed her that he thought his demotion was racially motivated. (*Id*.) This was the first time Boyd ever stated to her that he thought any treatment towards him had been racially motivated. (*Id*.)

On September 5, 2008, Ms. Lemond sent Boyd a letter informing him that the reason for his demotion, and loss of managerial responsibilities, was due to his violation of company policy. (Lemond Decl., ¶ 9, Ex. C.)

3

On September 11, 2008, Boyd gave notice that he was resigning. (Muñoz Decl., Ex. 16 to Ex. A.) Boyd stated that he was forced to resign because his wages had been cut, his job location was changed, and he was "harassed and repeatedly discriminated against." (*Id.*)

In his deposition, Boyd testified about two incidents, other than his demotion and transfer, which he believed were racially motivated. In the first instance, which occurred at the end of 2007 or beginning of 2008, Boyd stated that he had a conversation with Hughes about stepping down from being a hub coordinator because Boyd did not think that things were working well. (Muñoz Decl., Ex. A at 77:3-22, 78:21-79:17.) Boyd wanted to step down from being a hub coordinator and return to being parts store position. (*Id.* at 78:3-9.) According to Boyd, Hughes said to him in response "You're a big boy. You can handle it." (*Id.*, Ex. A at 77:17-78:2.) Boyd testified that he told Ms. Lemond that Hughes made this comment, but he did not remember whether he told Ms. Lemond that he believed Hughes' comment was racially offensive. (*Id.*, Ex. A at 245:20-252:16.)

The other incident involved Hughes saying that somebody was engaged in monkey business, but Boyd did not remember who the person was to whom Hughes was referring. (*Id.*, Ex. A at 130:3-19.) Boyd did not remember the context of why Hughes made that comment or the race of the person about whom Hughes was talking. (*Id.*)

Boyd also testified that he believed Hughes was racist based on the tone he used and Boyd's opinion that Hughes failed to support the management of the store in which Boyd worked because it was largely African-American and Latino. (*Id.*, Ex. A at 130:23-24, 132:18-133:13, 133:24-134:20, 204:7-18.) Boyd also believed that the reason Hughes told Boyd that he needed to follow a direction from the district manager of the commercial department to put up parts that the commercial department delivered was racially motivated. (*Id.*, Ex. A at 138:12-143:11.) Finally, Boyd testified that he was verbally reprimanded by Hughes once and Boyd believed the reason he was reprimanded was because of his race. (*Id.*, Ex. A at 146:11-147:25.)

Boyd stated in his deposition that he had testified, to the best of his recollection, of every incident he could recall in which he believed Hughes harassed him because of his race.

4

(*Id.*, Ex. A at 239:24-240:3.) He further stated that Hughes was the only person he could recall who harassed him on the basis of his race. (*Id.*, Ex. A at 4-11.)

Boyd testified that he was required to work overtime without compensation approximately 50 to 60 times, and that the average amount of time he was required to work overtime without compensation on those days was three to four hours each. (*Id.*, Ex. A at 303:10-13, 305:15-24.)

Boyd asserts the following causes of action: (1) violation of California Labor Code ("Labor Code") §§ 510 and 1198; (2) violation of Labor Code §§ 201 and 202; (3) violation of Labor Code § 226(a); (4) violation of California Business & Professions Code § 17200, *et seq.*; (5) race discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et seq.*; (6) harassment in violation of FEHA; (7) Retaliation in violation of FEHA; (8) hostile work environment in violation of FEHA; (9) violation of Labor Code § 1102.5, *et seq.*; and (10) constructive discharge in violation of public policy. (Second Amended Complaint.)

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Motion to Withdraw Admissions.**

On May 29, 2012, Defendants propounded requests for admissions. Boyd failed to respond to the requests for admissions within thirty days. Therefore, pursuant to Federal Rule of Civil Procedure 36 ("Rule 36"), the matters were deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Boyd now moves to withdraw these admissions and to file responses denying the requests for admissions.

Pursuant to Rule 36(b), "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The first prong of this test "is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (citation and quotation marks omitted). This part of the test

1  is easily satisfied here. Defendants' request for admissions include a request to admit that Boyd
2  was compensated for all hours of work he performed, that AutoZone did not discriminate or
3  retaliate against him, did not subject him to a hostile work environment, and did not harass him
4  because of his race. If the Court upholds Boyd's admissions, Defendants would have no need
5  for a presentation on the merits.

6        Defendants bear the burden of proving they would suffer prejudice if the admissions
7  were withdrawn under the second prong of the test. *Id.* Moreover, "[t]he prejudice
8  contemplated by Rule 36(b) is not simply that the party who obtained the admission will now
9  have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in
10 proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need
11 to obtain evidence with respect to the questions previously deemed admitted." *Hadley v. United*
12 *States,* 45 F.3d 1345, 1348 (9th Cir. 1995) (citation and quotation marks omitted). "When
13 undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice
14 that the nonmoving party would suffer at trial." *Conlon*, 474 F.3d at 623-24 (holding that
15 "reliance on a deemed admission in preparing a summary judgment motion does not constitute
16 prejudice").

17       Defendants argue that they would be prejudiced if the Court were to withdraw the
18 admissions because discovery is now closed and, thus, Defendants are unable to question Boyd
19 about his responses or gather further information in preparation for trial. Defendants also note
20 that the motion for summary judgment is now fully briefed. The problem with Defendants' first
21 argument is that Boyd's responses to the requests for admissions were due on June 28, 2012, the
22 last day for discovery. (*See* Docket No. 32.) Therefore, even if Boyd had timely denied the
23 requests for admissions and answered the related interrogatories, Defendants would not have
24 been able to propound further discovery. The problem with Defendants' second argument is
25 that the Ninth Circuit has explicitly held that reliance on deemed admissions in preparation of a
26 motion for summary judgment does not constitute prejudice. *Conlon*, 474 F.3d at 624.
27 Moreover, the Court notes that Defendants did not even mention the admissions until their reply
28 brief. Accordingly, Defendants have not shown how they would be prejudiced at trial.

1  Therefore, the Court exercises its discretion to allow Boyd to withdraw his admissions and file
2  his responses denying the requests for admissions.

3  **B.     Cross-Motions for Summary Judgment.**

4        **1.     Applicable Legal Standards.**

5  A principal purpose of the summary judgment procedure is to identify and dispose of
6  factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).
7  Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and
8  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
9  any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.
10 Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the
11 evidence or make credibility determinations, and is required to draw all inferences in a light
12 most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.
13 1997).

14 The party moving for summary judgment bears the initial burden of identifying those
15 portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine
16 issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is
17 sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.*
18 *Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the
19 outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the
20 ultimate burden of persuasion at trial, that party must produce evidence which either negates an
21 essential element of the non-moving party's claims or that party must show that the non-moving
22 party does not have enough evidence of an essential element to carry its ultimate burden of
23 persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.
24 2000). Once the moving party meets its initial burden, the non-moving party must go beyond
25 the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
26 issue for trial." Fed. R. Civ. P. 56(e).

27 In order to make this showing, the non-moving party must "identify with reasonable
28 particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### 2. The Parties' Cross-Motions.

#### a. Statute of Limitations.

Defendants contend that Boyd's claims under FEHA are barred by the statute of limitations to the extent they are premised on conduct that occurred before September 11, 2008. Under FEHA, the complainant must file an administrative charge within one year after the alleged unlawful practice occurred. Cal. Gov't Code § 12960. Conduct that occurred more than one year before the administrative complaint or charge is filed "cannot serve as a basis for liability unless a statutory exception exists or the continuing violation doctrine applies." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 879 (2010) (quoting *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 118 (2002)). The continuing violation theory "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 802 (2001). "[A]n employer's persistent failure ... to eliminate a hostile work environment ... is a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind ...; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." *Id*. at 823. "Permanence" means "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to ... end harassment will be futile." *Id*.

Here, Boyd filed a complaint with the California Department of Fair Employment and Housing on September 11, 2009. (Muñoz Decl., Exs. 17 & 18 to Ex. A.) The only incident that happened within a year of September 11, 2009 was Boyd's resignation. All of the conduct

Boyd alleges Defendants engaged in, including Hughes' two comments calling Boyd a big boy and referring to some other unidentified employee of engaging in monkey business, and Boyd's demotion and transfer – all happened prior to September 11, 2008.[2] AutoZone argues that these earlier incidents do not constitute a continuing violation. Boyd fails to argue in opposition to the motion for summary judgment that they do. Therefore, the Court finds that Boyd fails to demonstrate that a reasonable juror could find that these prior incidents occurred with reasonable frequency, were sufficiently similar in kind, and did not acquire a degree of permanence until Boyd's resignation on September 11, 2008. *See Richards*, 26 Cal. 4th at 823. In the absence of any showing that these prior incidents constitute a continuing violation, any claims based on these incidents are time barred. Accordingly, Boyd's fifth cause of action for race discrimination under FEHA, sixth cause of action for harassment under FEHA, seventh cause of action for retaliation under FEHA, and eighth cause of action for hostile work environment under FEHA are barred by the statute of limitations. Thus, the Court grants Defendants' motion and denies Boyd's cross-motion for summary judgment on these claims.

        **b.**    **Unlawful Discrimination.**

Even if Boyd's FEHA claims were not time-barred, his FEHA claims fail for independent reasons as well. "California has adopted the three stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 355 (2000) (citing, *inter alia*, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[3] Under this framework, Boyd must first establish a prima facie case of discrimination. *See Guz*, 24 Cal. 4th at 351-54; *Yanowitz*, 36 Cal. 4th 1028. Whether Boyd can meet his burden

---

[2] Boyd also testified in his deposition that he believed Hughes used a negative tone with him, provided Boyd and the store in which Boyd was a manager with less support, and required Boyd to follow a direction from another supervisor because Hughes was racist. Boyd did not provide any dates, either in his deposition testimony or in response to Defendants' motion for summary judgment, on which Hughes engaged in these purported activities. Therefore, Boyd failed to demonstrate that any such activities occurred within the statute of limitations period.

[3] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent" when analyzing state law-based discrimination claims. *Guz*, 24 Cal. 4th at 354.

9

to establish a prima facie case is a matter of law to be determined by the court. *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995). If Boyd establishes a prima facie case of race discrimination, the burden then shifts to AutoZone to articulate a legitimate, nondiscriminatory reason for its employment decision. Then, in order to prevail, Boyd must demonstrate that AutoZone's alleged reason for the adverse employment decision was a pretext for another, discriminatory or retaliatory motive. *See Guz*, 24 Cal. 4th at 355-56; *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

### i. Prima Facie Case.

To establish a prima facie case of discrimination, Boyd must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an easy one to satisfy, Boyd has failed to do so here. First, Defendants argue that Boyd cannot show that he was performing according to his employer's legitimate expectations at the time of his alleged constructive discharge because Boyd admits that he allowed a non-employee into the store, and that this non-employee performed work, in violation of company policy. Boyd does not submit any admissible evidence to create a question of fact on this issue.

Additionally, Boyd has not presented *any* evidence that similarly situated individuals outside his protected class were treated more favorably. Defendants argue, and cite to supporting evidence, that Boyd has no knowledge of Hughes disciplining, or not disciplining, other employees who allowed non-employees into the building after hours. (Muñoz Decl., Ex. A at 219:19-24.) Boyd fails to counter with any evidence, or even argument, which is fatal to

10

his claim.[4] *See Texas Dep't of Community Affairs*, 450 U.S. at 258 (holding that the plaintiff bears the burden of showing that similarly situated co-workers were treated differently); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976) (noting that the relevant question is whether the plaintiff engaged in misconduct of "comparable seriousness" as other employees who were not disciplined in the same manner); *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the employees allegedly receiving more favorable treatment are similarly situated ... the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects."). Based on Boyd's lack of evidence, Boyd fails to raise a dispute of fact regarding whether other employees with similar qualifications, but outside of his protected class, were treated more favorably. Therefore, the Court finds that Plaintiff has not met his burden to demonstrate the existence of a prima facie case of race discrimination.

Additionally, under FEHA, Boyd must, in addition to the first four elements, demonstrate some other circumstances that suggest discriminatory motive in order to establish a prima facie case. *See Guz*, 24 Cal. 4th at 355. Here, Boyd has failed to show this element as well. Boyd only proffers a generalized belief that Hughes was acting with a discriminatory motive. However, a generalized belief, standing alone, is insufficient to create a question of fact regarding Defendants' racial motivations. "A plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001); *see also*

---

[4] The Court notes that in his declaration, Boyd states in a conclusory manner, without identifying any other employees or even describing how such other employees were similar to him in all material respects, that "[o]thers who were not African American were permitted to allow their friends or family members to come into the store after closing and were not demoted." (Declaration of Karimah Boyd (Docket No. 50), ¶ 5.) Therefore, this statement in his declaration is insufficient to create a question of fact. This statement also fails to create a question of fact because Boyd does not provide any evidence that *Hughes*, the undisputed decision-maker in this case, knew of any such other employees. Moreover, Boyd does not state that any of these other employees permitted or encouraged non-employees to perform work in the store. Accordingly, even if the Court were to consider Boyd's declaration, Boyd fails to show that similarly situated individuals outside his protected class were treated more favorably.

11

*Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("subjective personal judgments" are insufficient to "raise a genuine issue of material fact"). Accordingly, the Court finds that Boyd has not met his burden to demonstrate the existence of a prima facie case of race discrimination.

### ii. Defendants Have Demonstrated Legitimate Business Reasons for Conduct.

Even if Boyd had successfully established a prima facie case of race discrimination, the undisputed facts demonstrate that Defendants had legitimate business reasons to demote and transfer him. AutoZone determined, and Boyd admitted, that he violated company policy by allowing a non-employee in a store after hours and allowing the non-employee to perform work in the store. Failure to perform in accordance with the standards set by the employer is sufficient to constitute a legitimate business reason for termination. *See Hersant v. Dept. of Social Servs.*, 57 Cal. App. 4th 997, 1006, 1009 (1997).

Under the governing law, the relevant inquiry is not whether Boyd is objectively culpable for the misconduct that AutoZone maintains was the basis for the adverse employment action. "Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal citations and quotations omitted); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that for purposes of plaintiff's Title VII claim, it did not matter if employees who spoke to the employer's investigator "were lying through their teeth" about plaintiff's alleged misconduct, as long as the employer believed the allegations). Boyd has not provided any evidence demonstrating that AutoZone and Hughes did not honestly believe that Boyd violated company policy. Therefore, Defendants have met their burden of demonstrating legitimate business reasons for demoting and transferring Boyd.

### iii. Boyd Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because Defendants present evidence demonstrating a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts back to Boyd. He must

1  demonstrate that Defendants' articulated reason is pretextual, and that his demotion and transfer
2  were actually motivated by impermissible discrimination. *See St. Mary's Honor Center*, 509
3  U.S. at 510-11; *see also McDonnell Douglas*, 411 U.S. at 1124. A plaintiff may do so "either
4  [1] directly by persuading the court that a discriminatory reason more likely motivated the
5  employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of
6  credence." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1437 (9th Cir. 1990) (internal
7  citations and quotations omitted). Boyd's evidence must be both specific and substantial to
8  overcome the legitimate reasons set forth by his employer. *Aragon v. Republic Silver State*
9  *Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

10 Boyd fails to refute Defendants' legitimate non-discriminatory reasons for their conduct.
11 At most, there is evidence that Boyd believes Hughes acted with a discriminatory motive.
12 However, Boyd's belief is insufficient to demonstrate pretext. *Bradley v. Harcourt, Brace &*
13 *Company*, 104 F.3d 267, 270 (9th Cir. 1996) (affirming summary judgment on sexual
14 discrimination claim where plaintiff produced no "specific, substantial evidence of pretext" to
15 rebut defendant's explanations for termination and relied primarily on her subject beliefs).

16 Therefore, the Court finds that Boyd has failed to set forth any direct or indirect
17 evidence to persuade the Court that a discriminatory reason more likely motivated his employer
18 or any indirect evidence tending to demonstrate that his employer's proffered explanation is
19 unworthy of credence. *See Merrick,* 892 F.2d at 1437. Having failed to raise a disputed fact
20 demonstrating that Defendants' articulated reason for their conduct is pretextual, either directly
21 or indirectly, the Court grants Defendants' motion for summary judgment and denies Boyd's
22 cross-motion on Boyd's claim for race discrimination under FEHA.

23 **c. Hostile Work Environment.**

24 Defendants also moves for summary judgment on Boyd's claim that he was subjected to
25 a hostile work environment. To prevail upon a hostile work environment claim, Boyd must
26 demonstrate that he was subject to unwelcome race-based harassment that was so pervasive as
27 to alter the condition of his employment and create an abusive working environment. *See*
28 *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989). Whether the

13

1    harassment complained of is sufficiently pervasive to create a hostile or offensive work
2    environment must be determined from the totality of the circumstances, including: (1) the
3    nature of the unwelcome acts or words; (2) the frequency of such encounters; (3) the total
4    number of days over which all of the offensive conduct occurred; and (4) the context in which
5    the harassing conduct occurred. *Id.* at 609-610.

6    To be actionable under FEHA, the harassment must be sufficiently severe or pervasive as to alter the conditions of employment and create an abusive working environment, and cannot be isolated, occasional, sporadic or trivial. *Id.* Boyd must demonstrate a concerted pattern of harassment of a repeated and routine nature that would interfere with a reasonable employee's work performance and would seriously affect the psychological well-being of a reasonable employee. *Id.* Isolated or stray comments over a period of years are insufficient to support such a claim. *Id.* at 611-12. Simple or occasional teasing will not be considered conduct so extreme as to amount to a change in the terms and conditions of employment. *See Farraggher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

15   As Defendants point out, Boyd's harassment claim is premised on two unrelated comments, one of which was not even directed at him. These isolated, unrelated comments are insufficient to create a hostile work environment. *Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) (finding "snide remarks" and threats, such as "your number's up" and "don't forget who got you where you are" were insufficiently severe to support a retaliation claim); *see also Fisher*, 214 Cal. App. 3d at 611-12.

21   In response, Boyd argues in a conclusory fashion that he "was subjected to harassment, retaliation and discrimination. ... Hughes commenced a campaign of harassment, intimidation and retaliation aimed at forcing Mr. Boyd to quit, including subjecting Mr. Boyd to harsher discipline, demotion, ridicule, humiliation and overloaded with additional duties." (Boyd's Cross-Mot. and Opp. to Defendants' Mot. for Summary Judgment at 4-5.) The only evidence Boyd cites to in support of this generalized statement are paragraphs six and seven to his declaration, but those paragraphs do not exist. Additionally, even if those paragraphs did exist, Boyd's entire declaration is inadmissible. Accordingly, the Court finds that Boyd fails to

demonstrate that he was subjected to a hostile environment. Accordingly, the Court grants Defendants' motion for summary judgment and denies Boyd's cross-motion on this claim.

### d. Retaliation.

In order to prevail on a retaliation claim under FEHA, Boyd must establish a prima facie case by demonstrating: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Rav v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). As with a discrimination claim, the burden then shifts to the employer to show a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the plaintiff must then demonstrate that the employer's reason was merely pretext. *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir. 1989).

Boyd contends that he complained about Hughes' conduct and racial discrimination. However, Boyd testified in his deposition that he did not remember whether he told Ms. Lemond that he believed Hughes' comment was racially offensive. (Muñoz Decl., Ex. A at 245:20-252:16.) Ms. Lemond stated under oath that the first time Boyd stated to her that he thought any treatment towards him had been racially motivated was on August 26, 2008, after he had already been demoted and transferred. Accordingly, Boyd has not shown that he engaged in any protected activity upon which he was retaliated against. Additionally, as discussed above, Defendants have demonstrated a legitimate nondiscriminatory reason for demoting and transferring Boyd. And, as discussed above, Boyd failed to demonstrate that the Defendants' proferred reason was pretextual. Accordingly, the Court grants Defendants' motion for summary judgment and denies Boyd's cross-motion on his claims for retaliation.

### e. California Labor Code § 1102.5

Boyd also alleges a claim for retaliation under California Labor Code § 1102.5 *et seq*. Section 1102.5 provides that:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a

15

>violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Lab. Code § 1102.5(b). To establish prima facie case for retaliation, an employee must show: "(1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004). The California Supreme Court has made clear that Section 1102.5 only protects employees who report their concerns to public agencies. This statute does not concern employees who only report their suspicions directly to their own employer. *See Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76-77 (1998). Defendants point out that Boyd testified in his deposition that, prior to his resignation, he had not reported any alleged illegal activity to any governmental agency. Boyd does not counter with any evidence demonstrating that he did report alleged illegal activity to a governmental agency before his resignation. Accordingly, the Court finds that Boyd fails to demonstrate the existence of a question of fact which would preclude the grant of summary judgment on this claim. The Court thus grants Defendants' motion for summary judgment and denies Boyd's cross-motion for summary judgment on this claim.

### f. Constructive Discharge.

In order to prove a claim for constructive discharge, Boyd must demonstrate that his working conditions were so intolerable that a reasonable employee would have felt compelled to resign. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246 (1994) ("The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."). The "adverse working conditions" must have been "unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id*. at 1247. In general, isolated acts of misconduct are insufficient to support a constructive discharge claim. Additionally, "a poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge." *Id*. Moreover, "the employer must either deliberately create the intolerable working

1   conditions that trigger the resignation or, at a minimum, must know about them and fail to
2   remedy the situation in order to force the employee to resign." *Turner*, 7 Cal. 4th at 1249-1250.

4   Defendants argue that Boyd fails to show that a reasonable employee would have found his working conditions were "intolerable." While Defendants concede that a continuous course of harassment may constitute "intolerable working conditions," Boyd has no evidence of such harassment. As discussed above, Boyd testified about two isolated comments, one of which was not even directed at him. With respect to his demotion and transfer, the California Supreme Court has made clear that a demotion, even when accompanied by a reduction in pay, is insufficient to trigger a constructive discharge. *Turner*, 7 Cal. 4th at 1247. The fact Boyd was also transferred, in accordance with AutoZone's practice when they demote a supervisor, to a location approximately four miles away, does not render working conditions intolerable to a reasonable employee. The Court notes that Boyd testified that he was concerned about the safety of the neighborhood in which the new store was located. However, it is not clear that this fact would be sufficient, standing alone, to create intolerable working conditions. Additionally, fatal to Boyd's claim, is the fact that Boyd has not submitted any evidence that he told AutoZone about his safety concerns before he resigned. *See id*. at 1249-1250. Accordingly, the Court grants Defendants' motion for summary judgment and denies Boyd's cross-motion for summary judgment on this claim.

### g. Inaccurate Wage Statements.

Boyd alleges that Defendant failed to provide accurate itemized wage statements in accordance with California Labor Code § 226 ("Section 226"). Section 226 provides in pertinent part:

> Every employer shall ... furnish each of his or her employees ... an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee... (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the

17

>name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Cal. Lab. Code § 226(a).

To state a claim for violation of California Labor Code § 226, "an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). Moreover, the mere failure to include all of the required information is insufficient to state a claim. Instead, an employee must demonstrate that he or she suffered an injury arising from the missing information. *Id.* at 1142-43. Boyd fails to submit any evidence of an injury suffered as a result of any missing information on his wage statements. Accordingly, the Court finds that Boyd fails to demonstrate the existence of a question of fact which would preclude the grant of summary judgment on this claim. The Court thus grants Defendants' motion for summary judgment and denies Boyd's cross-motion for summary judgment on this claim.

### h. Failure to Pay Wages.

Boyd contends that he was required to work overtime off the clock and that he was not compensated for that time in violation of California law. Defendants move for summary judgment on Boyd's first claim for failure to pay such wages and his second claim for failure to pay such wages at the termination of his employment. Boyd's second claim also seeks penalties under California Labor Code § 203, based on AutoZone's alleged willful failure to pay these wages.

Boyd testified in his deposition that he was required to work overtime off the clock approximately fifty to sixty times, for approximately three to four hours each time. (Muñoz Decl., Ex. A at 305:15-24.) He also testified that he was required to work approximately four to five hundred hours off the clock. (*Id.*, Ex. A at 310:9-19.) Defendants argue that no reasonable juror could find that Boyd worked these hours. Defendants further argues that Boyd cannot establish that AutoZone's failure to pay any wages was willful. Although a juror might not find Boyd's testimony to be credible, the Court cannot weigh the evidence or make credibility

determinations on a motion for summary judgment. *Freeman*, 125 F.3d at 735. There is sufficient evidence in the record to create a question of fact which precludes summary judgment on Boyd's first and second claim. Moreover, to the extent Boyd's claim under California Business and Professions Code § 17200 is premised on AutoZone's alleged failure to pay overtime wages, summary judgment on this claim is also not warranted.

However, the Court finds that, based on Defendants' evidence that Boyd was compensated for every hour that he worked at AutoZone, summary judgment is not warranted in Boyds' favor either. Accordingly, the Court denies Defendants' and Boyd's motions for summary judgment on these claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Boyd's motion to withdraw his admissions, GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment, and DENIES Boyd's motion for summary judgment. With respect to Defendants' motion for summary judgment, the Court GRANTS summary judgment on all of Boyd's claims under FEHA as time-barred. An independent reason for granting summary judgment on these claims is that Boyd fails to submit sufficient evidence to create a genuine issue of material fact. The Court also GRANTS summary judgment on Boyd's claim under California Labor Cod § 226(a), his claim under California Labor Code § 1102.5, and his claim for constructive discharge. The Court DENIES Defendants' motion for summary judgment on Boyd's first and second claims for failure to pay for overtime work and on Boyd's claim under California Business and Professions Code § 17200 to the extent it is premised on the failure to compensate for overtime worked by Boyd.

**IT IS SO ORDERED.**

Dated: September 26, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE